UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MANUEL DUARTE RODRIGUEZ,<br><br>        Petitioner,<br><br>   v.<br><br>LARRY SMALL,<br><br>        Respondent. | 1:09-cv-00424 AWI MJS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Larry Small, is represented by Paul A. Bernardino, of the Office of the California Attorney General.

**I.    PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on March 28, 2007, of first degree murder, with a conduct enactment resulting from knowledge of another person being personally armed with a firearm. (C.T.[1] at 149, Lodged Doc. 10.) The trial court also found true allegations that Petitioner had suffered prior serious felony convictions which qualified as "strikes" under California's "Three Strikes"

---

[1] "C.T." refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

law. (Id. at 193.) On June 4, 2007, Petitioner was sentenced to serve a term of seventy-five (75) years to life in state prison. (Id. at 220-221.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District. On May 29, 2008, the judgment was affirmed in a reasoned opinion. (Lodged Doc. 3.) Petitioner then filed a petition for review in the California Supreme Court. (Lodged Doc. 4.) On August 20, 2008, the petition was summarily denied. (Lodged Doc. 5.)

On July 14, 2009, Petitioner filed a habeas petition in the Stanislaus County Superior Court. (Lodged Doc. 6.) The petition was denied on August 3, 2009, in a reasoned decision. (Lodged Doc. 7.) Petitioner then filed a habeas petition in the Fifth District Court of Appeals, on September 17, 2009.  The court summarily denied the petition on November 2, 2009. (Lodged Doc.  8.) On November 30, 2009, Petitioner filed a habeas petition in the California Supreme Court. The petition was summarily denied on June 9, 2009. (Lodged Doc. 9.)

On February, 27, 2009, Petitioner filed the instant federal habeas petition. (Pet., ECF No. 1.) Petitioner filed a second amended petition, the operative petition in this matter, on July 16, 2010. (2nd Am. Pet., ECF No. 25.) Petitioner raises two grounds for relief.  First, Petitioner asserts that there was insufficient evidence to prove Petitioner aided and abetted in the commission of the first-degree murder. (Id. at 30-39; Lodged Doc. 1.) This claim was adopted by way of incorporation by reference to the claims of his direct appeal.

Second, Petitioner adopts by incorporation his claims in his state habeas petition. (2nd Am. Pet., at 4.) Accordingly, ground two presents three related claims of ineffective assistance of counsel:

 (i) Petitioner's trial counsel was ineffective for failing to show insufficiency of the evidence that Petitioner was in the van as the getaway driver at the time of the murder (Id. at 77-83[2]);

 (ii) Trial counsel was ineffective for failing to meet with Petitioner and investigate an

---

[2]Respondent did not include a copy of Petitioner's habeas petition filed with the California Supreme Court. Instead Respondent refers to the copy attached as an exhibit to Petitioner's Second Amended Petition. (See 2nd Am. Pet. at 87-106.)

U.S. District Court
E. D. California
-2-

alibi defense (Id.); and

(iii) Petitioner's appellate counsel was ineffective for failing to raise an insufficiency of the evidence claim that Petitioner was inside the van at the time of the murder. (Id.)

Respondent filed an answer to the second amended petition on October 18, 2010, and Petitioner filed a traverse on December 27, 2010. (Answer & Traverse, ECF Nos. 25, 37.)

## II.  FACTUAL BACKGROUND[3]

Manuel Arciga Orneles was killed in Brennan Park in Oakdale in June 1998. Dr. Robert Lawrence, a pathologist employed by the office of the Stanislaus County Coroner, testified that he reviewed a report of an autopsy performed June 15, 1998, on Manuel Arciga Orneles, and that the report indicated the deceased died of "[m]ultiple gunshot wounds, particularly of the head."

On June 14, 1998 (June 14), Jose Gomez saw a man (the victim) shot and killed in a park in Oakdale.[4] On that date, Gomez was hosting a birthday party for his three year-old son, and at one point, the party moved to the park across the street from Gomez's house. In the park, Gomez observed a group of four or five people, one of whom was appellant. They were "drinking," and "[o]ne of the guys" was "arguing." The argument was about "money or something" and had "something to do with" a bicycle. One of the men, not appellant, was "asking [the victim] for the money for the bike."

At one point, the man arguing with the victim said "that he would be back in ten minutes and that if he saw him there, he was going to kill him." In response, the victim "was laughing."

Thereafter, appellant and another person left the park in a van. Less than 15 minutes later, the two persons returned in the same van. By this time, Gomez had returned to his house and was in his front yard, "cutting the cake [when he] heard some shots." He "looked out front" and saw "the man who was shooting" walking toward the victim. The shooter "seem[ed] to have come from the passenger's side of the van." Gomez did not see "the first three shots," but he "did see when [the shooter] approached the guy and fired into his head." After the shooting, the two men left in the van.

Gomez did not recall if appellant was the man who did the shooting, but at the preliminary hearing Gomez testified appellant was not the shooter.

Cynthia Aldridge testified to the following. She attended the birthday party in the park on June 14. After the children finished hitting the piñata, the party moved back to Gomez's house. At some point thereafter, she saw three

---

[3] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

[4] Except as otherwise indicated, the remainder of our factual statement is taken from Gomez's testimony.

men in the park. Two of them were arguing "over $25 . . . ." One of these men "took the bike because he wanted his $25"; put the bicycle in a van; and "said he was going to come back, and if he didn't have his $25 that he was going to shoot . . . the SOB." The van then drove off.

Aldridge further testified to the following. She was watching television in Gomez's house when, approximately 10 minutes later, the van returned and Aldridge heard multiple gunshots. Aldridge looked out the window and saw the same man who had been arguing and who had left in the van "walking towards two guys sitting out there, just walking and shooting." The man doing the shooting was "walking . . . as if he had came out of the van, walking towards [the victim]." Aldridge's view was of the man's back; she could not see his face. After the man was "done shooting," he got into the van on the passenger's side and the van drove off.

Miguelangel Castro testified to the following. On the afternoon of June 14, he was at a park in Oakdale "talking and drinking" with some men, including appellant, Enrique Lopez and "Manuel Ventura," who was also known as "Arciga." At some point, appellant and Arciga were arguing about "something to do with a debt." Lopez "butted into the conversation," became "furious" and told Arciga that Arciga "should get something" because he (Lopez) "was going to get something." Castro understood Lopez's statement as a threat. Appellant was "close by" at the time Lopez made this threat.

Castro further testified to the following. After Lopez threatened Arciga, appellant and Lopez left the park "[i]n the van." The van later returned, at which point Lopez, with a gun in his hand, got out of the van, approached Arciga, told Castro to "stand aside" and "started to shoot . . . ." As Lopez approached further, Castro heard more shots. Castro did not know if appellant was in the van at this time.

Cynthia Aldridge testified that her nephew, Cesar Natali, who was approximately 12 or 13 years old on June 18, was in the park that day, "right there . . . behind the men that were drinking," and when the shooting started, he grabbed Aldridge's niece and ran. Natali testified to the following. At the time of the trial, he was 22 years old, and serving time in prison. In approximately 1998, he attended a child's birthday party in Oakdale.

However, in response to several subsequent questions, he stated he was "blackin' out." He testified that when prison inmates testify "[t]hey get hurt." Eventually, he refused to answer questions, stating "I can't do this no more."

Thereafter, an audio tape of a statement Natali gave to Detective Joe Carrillo of the Oakdale Police Department on January 30, 2007, was played for the jury. A transcript of that tape, made part of the record on appeal, indicates Natali told the detective the following.[5] When Natali was approximately 13 years old, he was at a child's birthday party at a house across the street from a park in Oakdale when he "[saw this] dude park with this van," after which "these guys [were] arguing over some money."

The argument was "over twenty dollars." One of the men, "the shooter,"

---

[5]Except as otherwise indicated, the remainder of our factual statement is taken from the transcript of Natali's statement to Detective Carrillo.

who was outside the van, said to another man, who was also outside the van, "'you owe me' in Spanish." The driver of the van remained in the van and was "arguing out the window."

The argument continued, until the man who claimed he was owed money "said he was gonna kill him," i.e., the man with whom he had been arguing. He then "got back in the van," and the van drove off.

Approximately 20 minutes later, the van returned. It "pulled up real fast." The driver remained in the vehicle, but the other man, who previously had been outside the van arguing, got out of the van, and "said did you think [I was] playin[g] motherfucker" and "[t]hen . . . he shot [the man with whom he had been arguing] two [or] three times." The shooter used a handgun; it "looked pretty big."

After the shooting, the shooter got back in the van, and he and the driver "took off" in the van.

Oakdale Police Officer Vernon Gladney testified to the following. In the course of his investigation of the shooting at the park on June 14, he made contact with Jose Gomez. Gomez told the officer that earlier that evening "several men" who had been "drinking beer," were arguing "about some kind of a debt," and that "a short time later" two of these men returned in a maroon van, at which point one of the men "got out of the van and shot the victim." Shortly thereafter, Officer Gladney found a van meeting the description provided by Gomez, parked approximately one quarter mile from the park.

Detective Carrillo testified to the following. The van was eventually taken to the police department, where it was searched. Inside the van, police found a bicycle and some insurance "paperwork addressed to Jose Duarte." The van was registered to appellant's sister.

The prosecution also presented testimony that appellant's fingerprints were found in the van.

(Lodged Doc. 3 at 2-4.) (footnotes in original.)

### III.   DISCUSSION

####    A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

## B.  Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.  Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Harrington instructs that whether the state court decision is reasoned and explained,

or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.  Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002); Musalin v. Lamarque, 555 F.3d at 834.

## IV. REVIEW OF PETITION

### A. Ground One - Sufficiency of the Evidence[6]

Petitioner claims he was denied his right to due process when he was convicted of aiding and abetting in the murder without sufficient evidence. (2nd. Am. Pet. at 30-39.)

#### 1. Legal Standard - Sufficiency of the Evidence

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. Id., citing Jackson, 443 U.S. at 319. "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Id., quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow '**any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.**'" Id., quoting Jackson, 443 U.S. at 319 (emphasis in original). "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Id.

---

[6] Respondent, in his answer, addressed the grounds raised in the petition in reverse order. The Court, to avoid confusion, shall do likewise.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005); see also Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) ("Thus, when we assess a sufficiency of evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted.")

### 2. Relevant State Court Decision

On Petitioner's direct appeal, the Fifth District Court of Appeal denied Petitioner's claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. Based on the "look-though" doctrine of Ylst v. Nunnemaker, the Fifth District Court of Appeal decision is considered to be adapted by the California Supreme Court and the operative state court decision for this claim. 501 U.S. at 803. In the decision the state court found substantial evidence of Petitioner aiding and abetting in the murder:

> [A]ppellant challenges the sufficiency of the evidence as to both the act and the mental state required for aiding and abetting. With respect to the required act, he argues that the evidence was insufficient to establish he aided and abetted in the murder of the victim because, he asserts, the evidence did not establish appellant did anything before the murder to encourage, instigate or facilitate the crime. There is no merit to this contention. As appellant does not seriously dispute, the jury reasonably could have concluded that appellant drove Lopez to the park, and that Lopez immediately got out of the van and shot the victim. And, the jury reasonably concluded further, the act of transporting the shooter to the scene of the shooting "aid[ed] . . . the commission of the crime." (People v. Beeman [1984] 35 Cal.3d [547,] 561.)
>
> For the most part, appellants challenge to his conviction focuses on the mental state required to establish aider and abettor culpability. In support of his claim that the evidence was insufficient to establish that he knew of and shared the shooters murderous intent, he argues as follows: (1) there was no testimony appellant threatened the victim or expressed any interest in hurting [him]; (2) there was no evidence of when or how Lopez obtained the gun he used, and therefore no evidence appellant knew Lopez was armed; and (3)[n]o evidence showed that appellant had any reason to credit Lopez's threats. Appellant bases the third of these claims, in turn, on the following claims: neither the victim nor the witnesses who heard the threat appeared to take it seriously; the conditional nature of the threat -- Lopez allegedly threatened to kill Arciga if

Arciga didn't come up with $20 -- indicated Lopez wanted the $20 and not to commit murder; and the argument was over something so incredibly trivial that appellant could not have expected [it] would actually result in a murder.

The factors cited by appellant militate in favor of a finding that appellant did not take Lopez at his word, but this does not compel reversal. As indicated above, it is of no moment that the circumstances might be reconciled with a finding contrary to that reached by the jury if substantial evidence supports the jury's finding. (People v. Kraft [2000] 23 Cal.4th [978,] 1053.) The jury here reasonably could have found as follows: Lopez threatened to kill the victim. The threat was explicit and unconditional, as in Natali's account to Detective Carrillo, or it was conditioned only on the victim being present when Lopez returned, as Gomez testified. The threat could also have been thinly veiled but no less unconditional, as in the testimony that Lopez gave warned the victim to get something because he (Lopez) was going to bring something. Appellant heard these threats, left the park with Lopez and soon thereafter drove Lopez back to the park, where Lopez got out of the van and shot the victim. Based on the foregoing, the jury reasonably could have concluded further that notwithstanding what others might have thought about Lopez's intentions, appellant believed Lopez intended to kill the victim, and that he transported Lopez back to the park with the intent to aid in that endeavor.

Appellant cites the case of Juan H. v. Allen (9th Cir. 2005) 408 F.3d 1262 (Juan H.). In that case, following a shooting in a trailer park where Juan H. (Juan), a minor, and his brother Merendon lived, Merendon, accompanied by Juan, approached the victim and another person in the trailer park and asked if they were the ones that shot up his pad. (Id. at p. 1267.) Merendon then pulled a shotgun from his side or the front of his pants and shot the victim, who later died of his wounds. "During the shooting, Juan H. did not say anything, make any gestures, or otherwise encourage Merendon." (Ibid.)

Juan suffered a juvenile court adjudication of murder, based on an aiding and abetting theory. The Court of Appeals, in a review of the district court's denial of Juan's petition for writ of habeas corpus, found the evidence insufficient to support the adjudication: "[T]he record reflects no direct evidence that Juan H. had any idea that Merendon planned to assault or murder Magdelano and Ramirez [the victim and his companion, respectively]. Further, the circumstantial evidence presented does no more than establish that a rational trier of fact could conclude that Juan H. knew his brother was armed and ready to confront Magdelano and Ramirez if the family and home of Juan H. were again threatened. That Juan H. stood behind his older brother after the family home had been attacked, even if he knew his brother was armed, does not permit the rational inference that he knew his brother would, without provocation, assault or murder the victims." (Juan H., supra, 408 F.3d at p. 1278.)

Juan H. is readily distinguishable. There, unlike the instant case, there was no evidence Juan heard the perpetrator threaten to kill the victim shortly before the shooting, nor did Juan drive, or in any way assist his brother, in arriving at the scene of the shooting.

In the instant case, as demonstrated above, the jury reasonably could have concluded from the evidence that Lopez intended to, and did murder, the victim, and that appellant, with the knowledge of Lopez's intent and for the purpose of assisting him in carrying out that intent, transported Lopez to the

scene of the shooting.  Therefore, substantial evidence supports appellant's conviction.

(Lodged Doc. 3 at 9-11.)

### 3. Argument and Analysis

Petitioner adopts his arguments from his direct criminal appeal regarding why the evidence was insufficient. In the direct appeal, he asserts that at most he was an accessory after the fact to Lopez's act of murder for knowingly driving Lopez away from the scene of the murder. (Lodged Doc. 1 at 13-14.) Petitioner contends that he did not do anything before the murder to encourage, instigate, or facilitate Lopez's action and that he did not have any knowledge that Lopez intended to kill the victim. (Id.) Despite evidence that Petitioner was present during the argument, drove away with Lopez, and was driving the vehicle when Lopez returned and murdered the victim, Petitioner argues that there is no evidence that he encouraged Lopez to take any action against the victim, or that Petitioner knew that Lopez was armed and intending to kill the victim. (Id.)

The Fifth District Court Appeal, addressed these arguments, and agreed that "[t]he factors cited by [Petitioner] militate in favor of a finding that [Petitioner] did not take Lopez at his word." (Lodged Doc. 3 at 9-11.) But the Court found that based on the facts presented at trial, it was reasonable for the jury to find that Lopez's threats, while veiled, conditional, or otherwise, were sufficient to place Petitioner on notice of Lopez's intent to kill the victim, and that Petitioner then drove the vehicle to assist in the murder of the victim.

This Court agrees. Upon review, the Court must view the evidence in a light most favorable to the prosecution, and presume that any conflicting facts or inferences will be resolved in favor of the prosecution. Jackson, 443 U.S. at 326. Accordingly, the inference that Petitioner was aware of Lopez's intent to kill based on the threats made at the argument, while challenged by Petitioner, must be resolved in favor of the prosecution.

Viewing the evidence in the light most favorable to the prosecution, and for the reasons expressed by the state appellate court, there was sufficient evidence introduced at Petitioner's trial to support the jury's verdict. As explained by the state court, there was evidence

introduced at Petitioner's trial from which a rational jury could conclude that Petitioner had knowledge of Lopez's intent to kill the victim and aided and abetted in the killing by driving Lopez to and from the murder scene. This evidence is sufficient to support Petitioner's conviction for first degree murder based on his role as an aider and abettor as that crime is defined by California law. The conclusion of the state court that sufficient evidence supported the guilty verdict in this case is not contrary or an unreasonable application of United States Supreme Court authority. Accordingly, Petitioner is not entitled to relief on this claim.

### B. Ground Two - Ineffective Assistance of Counsel

Petitioner adopts by incorporation his claims in his state habeas petition regarding ineffective assistance of counsel. Petitioner raises three claims:  (i) Petitioner's trial counsel was ineffective for failing to show insufficiency of the evidence that Petitioner was in the van as the getaway driver at the time of the murder; (ii) Trial counsel was ineffective for failing to meet with Petitioner and investigate an alibi defense; and (iii) Petitioner's appellate counsel was ineffective for failing to raise an insufficiency of the evidence claim that Petitioner was inside the van at the time of the murder. The Court shall address each in turn.

#### 1. Ineffective Assistance of Counsel

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.

> Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 2.    Relevant State Court Decision

The Stanislaus County Superior Court denied Petitioner's claims of ineffective assistance of counsel in a reasoned decision. The decision, in its entirety held:

> In this Writ, Petitioner challenges his March 2007 conviction for aiding and abetting in a first degree murder. His case was appealed and became final in November 2007. In this Writ, Petitioner attaches and re-argues his contention on appeal that there was insufficient evidence to support the conviction. This issue was fully briefed and decided on appeal and the Appellate Court found substantial evidence.
>
> Petitioner also raises for the first time ineffective assistance of counsel. Petitioner has attached a declaration stating that his trial counsel did not come and visit him at the jail, and had he done so, he would have found out about Petitioner's alibi that he was not present at the time of the shooting.
>
> The Court notes that no Marsden requests or complaints about the representation were made anytime before or after the trial. Moreover, the Court [i.e., the presiding trial judge] did not see or hear anything to indicate a lack of communication between defendant and attorney at any time.
>
> In addition, the "alibi" admitted certain elements that were contested at

E. D. California

-15-

trial, and may very well have done more damage than good.

ACCORDINGLY, the Writ is DENIED.

(Lodged Doc. 7.)

Petitioner then filed a habeas petition in the Fifth District Court of Appeals and the California Supreme Court. Both petitions were summarily denied. The California Supreme Court is therefore presumed to have denied the claim for the same reasons stated by the superior court. Ylst, 501 U.S. at 803.

### 3. Failure to Argue That Petitioner Was Not Driving the Van at the Time of the Murder

Petitioner's first claim of ineffective assistance of counsel is that counsel failed to argue that there was insufficient evidence because, he felt, there was no evidence presented that he was driving or otherwise in the van when Lopez returned and murdered the victim. Petitioner does not deny that he was in the park at the time of the argument, or that he left the park with Lopez in the van. Petitioner disputes that there is any evidence that he returned with Lopez in the van. There is little, if any, direct eyewitness testimony that identifies Petitioner when the van returned to the park. However, there is significant and compelling circumstantial evidence that he was driving the van. Witness Gomez testifies that the van returned to the park in less than fifteen minutes and the same two men returned. (Lodged Doc. 3 at 2-3.) Further, witnesses Cynthia Aldridge, Michaelangel Castro, and Cesar Natali, all testified to similar events, even though the witnesses did not see the person driving the van when it returned. (Id. at 3-6.) Evidence was presented that a later search of the van revealed paperwork in the van addressed to Petitioner, the van being registered to his sister, and that his fingerprints were found in the vehicle. (Id.)

The evidence presented at trial created a strong inference that Petitioner was driving the vehicle at the time of the murder and had the requisite mental state to be found guilty of aiding and abetting the in the commission of the offense. Many witnesses saw Petitioner enter the van with Lopez after the argument. The van returned to the park shortly thereafter. Due to the short passage of time, it was reasonable for the jury to find that Petitioner was still in the

van. It was also reasonable for Petitioner's attorney not to directly argue that Petitioner was not present at the time of the murder. See Harrington v. Richter, 131 S. Ct. at 789 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.") Instead, defense counsel argued that Petitioner may have driven the van under duress, positing that Lopez had a gun and could have easily threatened to kill Petitioner if he did not do so. (See Reps. Tr., Vol. 2 at 447, 464.) Petitioner's counsel's strategy was legitimate, though ultimately unsuccessful.

Petitioner has not shown that defense counsel's actions fell below an objective standard of reasonableness. Further, the state court's rejection of the claim was neither contrary to nor an unreasonable application of Strickland.[7] See Harrington, 131 S. Ct. at 785-86. Petitioner's first claims of ineffective assistance of counsel are without merit.

### 4.    Failure to Investigate Alibi Defense

Petitioner's second claim for ineffective assistance of counsel is that defense counsel failed to talk to him before the trial and find out his alibi - that he was not in the van at the time of the shooting. In support of his claim, Petitioner attached the following statement in a declaration attached to his habeas petition:

> Had [defense counsel] gone to see me at jail, I would have told [him] that I was with Lopez when he got in the argument with Arciga and that I left with Lopez in my van. After we left, Lopez asked me to borrow my gun, I became frightened, and lied to him telling him that I sold my gun for drugs. We sat in the van for about a half an hour, and he calmed down. He asked me if I wanted to go to the bar, but I had to help my neighbor fix his car. He told me that he didn't want to walk, so he asked to borrow my van, I told him yes and to return it to me later.
>
> Lopez did not come back that night. The next day, one of my family members told me that the police were looking for me, the police accused me of killing someone. I figured since the police were going to frame me, I'd go to Mexico.

(2nd. Am. Pet. at 105-106.)

---

[7] It should be noted that the state court did not specifically address this claim in its decision. However, in Harrington, the Supreme Court held that when the state does not address the claim, federal courts should determine what arguments the court could have made and if those arguments were an unreasonable application of clearly established Supreme Court law. Harrington, 131 S. Ct. at 786. Here, the state court found there was sufficient evidence, and therefore could have also found that it was reasonable for defense counsel not to present a defense based on that theory in light of the significant amount of evidence presented at trial.

U.S. District Court
E. D. California
-17-

The state court rejected Petitioner's argument based on the fact that there was no evidence presented at the trial that Petitioner was not communicating well with counsel, and that "the 'alibi' admitted certain elements that were contested at trial, and may very well have done more damage than good." (Lodged Doc. 7.)  The state court's decision was reasonable. Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner has not presented a strong alibi. While he claims he was not in the van when it returned and Lopez shot the victim, he has not provided any reliable evidence to support his recollection of the events. He presents his own declaration, but provides no information regarding other witnesses or evidence that he let Lopez borrow the van. It is not reasonable to believe that a jury, presented with such an argument would made a different decision. The state court's rejection of the claim was neither contrary to nor an unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's second claim of ineffective assistance of counsel is without merit.

### 5.     Ineffective Assistance of Appellate Counsel

Petitioner's third claim of ineffective assistance of counsel is that appellate counsel failed to argue that Petitioner was not in the van during the shooting when presenting a sufficiency of the evidence argument. Instead, appellate counsel focused on Petitioner's lack of intent to aid or abet in the commission of the crime.

Where the challenge is to the effective assistance of appellate counsel, the Strickland standard apply in the same manner as claims of ineffective assistance of trial counsel . Smith v. Robbins, 528 U.S. 259, 285 (2000). It is well settled that an attorney cannot be ineffective for failing to take a futile or meritless action. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.") (citations omitted); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") (citation omitted); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (same). Moreover, in Smith, the United States Supreme Court indicated that an appellate attorney filing

a merits brief need not and should not raise every non-frivolous claim. Smith v. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id.

As discussed above, significant evidence was presented from which the jury could infer that Petitioner was driving the van. Petitioner presents little evidence beyond his own declaration that he was not in the van. Given the ample evidence supporting Petitioner's conviction, there is no reasonable probability that counsel's failure to argue that he was not present in the van was in error or prejudice affecting the outcome of the appeal. Appellate counsel presented a reasonable theory on appeal that Petitioner lacked the requisite mental state.

Based on the foregoing, the Court finds that Petitioner has failed to show either deficient performance or prejudice. Accordingly, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**V.     RECOMMENDATION**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter judgment.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are

////

////

////

1  advised that failure to file objections within the specified time may waive the right to appeal the

3  IT IS SO ORDERED.

4  Dated:     January 21, 2012                        /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE